# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                                       **Case No. 16-CR-168**

**JOSE PEREZ**
    **Defendant.**

## DECISION AND ORDER

Defendant Jose Perez requests reconsideration of the denial of his motion for compassionate release. See United States v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010) (discussing motions for reconsideration in criminal cases). A motion for reconsideration may be appropriate where the court has misapprehended the issues, where a significant change in the law has occurred, or where significant new facts have been discovered. United States v. Redmond, No. 3:14-CR-30109-NJR, 2020 U.S. Dist. LEXIS 233863, at *3 (S.D. Ill. Dec. 14, 2020). Defendant fails to establish a basis for reconsideration in his case.

First, defendant submits a report from the Office of the Inspector General ("OIG") critiquing the BOP's COVID-19 response at FCI Milan, his place of confinement. (R. 1067 at 2; R. 1067-1 at 1-50.) Defendant further contends that FCI Milan has a serious black mold problem, to which the warden has turned a blind eye. (R. 1067 at 2.) He provides a minute order in which the court set a deadline for the government to respond to another inmate's claim that the presence of mold at FCI Milan aggravates that inmate's asthmatic condition. (R. 1067-1 at 52.) Defendant states that his underlying medical condition of asthma has worsened, as he is now prescribed a higher dosage of the medication Symbicort, and that with the presence

of black mold at FCI Milan his condition will continue to worsen. (R. 1067 at 3.) He states that he must now protect himself from both COVID-19 and its variants and black mold while he serves his sentence. (R. 1067 at 3.) He further notes that Michigan is a COVID-19 hot spot and contends that the most effective way to deliver medical care to him is to release him from FCI Milan. (R. 1067 at 4; R. 1067-1 at 53-69.)

The conditions at a prisoner's facility, including the adequacy of the BOP's response to the pandemic, are relevant in deciding a motion for compassionate release. However, defendant fails to connect any of the shortcomings noted in the OIG report to his specific situation.[1] In my order denying his motion, I discussed defendant's asthma, noting that he failed to present any evidence that it was moderate to severe such that it increased his risk from COVID-19 under CDC criteria. (R. 1058 at 11.) To the contrary, the medical records indicated that his asthma was mild and controlled with inhalers. (R. 1058 at 12.) Defendant presents no medical evidence with his motion for reconsideration substantiating the claim that his asthma has worsened. Nor does he present evidence (aside from the minute order in

---

[1] Because defendant makes no effort to link the shortcomings noted in the report to his specific situation, it is unnecessary to discuss the report in detail. It suffices to say that the primary problems identified by the OIG occurred during the early days of the pandemic, long before defendant began serving his sentence on September 4, 2020. (R. 1058 at 9.) For instance, the report noted that while FCI Milan complied with the CDC's April 3, 2020, guidance that face coverings be worn, by that time the virus was already spreading through the prison. (R. 1067-1 at 8.) The report also discusses shortages of face coverings in March and April 2020. (R. 10167-1 at 11.) The report further found that during the early days of the pandemic Milan's health services staff did not recognize certain symptoms as potentially being related to COVID-19, leading to staff exposures. (R. 1067-1 at 8-9.) Staffing shortages due to COVID-19 were also a challenge in April 2020. (R. 1067-1 at 12.) While FCI Milan experienced a second wave of COVID-19 cases in December 2020, the report discusses this only briefly in an appendix. (R. 1067-1 at 44.) According to the most recent data posted by the BOP, FCI Milan now has 1 positive inmate and 4 positive staff members; 3 inmates have died, no staff members have died, and 252 inmates and 79 staff members have recovered. https://www.bop.gov/coronavirus/ (last visited April 27, 2021).

another prisoner's case) documenting a black mold problem at FCI Milan placing him at greater risk. In my previous order I also noted that defendant appeared to be receiving comprehensive medical treatment in prison. (R. 1058 at 15, citing 101 pages of medical records.) I further noted that defendant had already contracted the virus—indeed, he tested positive before reporting to prison—and recovered without complication. (R. 1058 at 9, 12-13.)

Second, defendant contends that reconsideration is warranted based on an intervening change in the law. He cites United States v. Elias, 984 F.3d 516 (6th Cir. 2021) and United States v. Taylor, No. 20-2077, 2021 U.S. App. LEXIS 1930 (6th Cir. Jan. 22, 2021), in which the court held that U.S.S.G. § 1B1.13 is not an "applicable" policy statement when a prisoner moves for compassionate release on his own behalf, and that the policy statement's non-dangerousness requirement is no longer an independent basis on which to deny a defendant-filed motion for compassionate release.

These Sixth Circuit decisions came down two months before I issued my order in this case, so they are not new. More importantly, I acknowledged that the policy statement was not binding under Seventh Circuit case-law (R. 1058 at 6, citing United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020)), and I discussed danger to the community in the context of the 18 U.S.C. § 3553(a) factors, not under the policy statement, U.S.S.G. § 1B1.13(2) (R. 1058 at 15). The Seventh Circuit has held that even if the district court does rely on U.S.S.G. § 1B1.13(2) any error is harmless when the court also discusses the § 3553(a) factors. See United States v. Sanders, No. 20-2561, 2021 U.S. App. LEXIS 8606, at *8 n.3 (7th Cir. Mar. 24, 2021) ("Although the district court incorrectly believed itself to be bound by § 1B1.13, any error is harmless because the court's weighing of the § 3553(a) factors independently supports its decision[.]"); United States v. Burnley, 834 Fed. Appx. 270, 272 (7th Cir. 2021) ("In denying

Burnley's motion, the district court cited a policy statement of the Sentencing Guidelines that requires a finding that "the defendant is not a danger to the safety of any other person" as a precondition for release. We have since ruled that this policy statement does not apply to petitions under the First Step Act, like Burnley's, initiated by an inmate rather than the Director of the Bureau of Prisons. But the mistake is inconsequential because the standard the court relied on matches the standard under § 3553(a)(2)(C), which the district court also referenced.") (internal citations omitted).

Third, defendant argues that I should place greater weight on his good prison conduct than on his prior convictions, which are now older and reflect youthful immaturity. (R. 1067 at 5-6.) In my order, I acknowledged that defendant appeared to be using his time in prison wisely, but he presented no evidence that his efforts had been so commendable as to overcome the other § 3553(a) factors weighing against release. (R. 1058 at 15.) Nor does he present any such evidence now. In response to defendant's claim that he had never been convicted of a violent offense, I noted that:

> his record includes convictions for aggravated battery in August 1991 arising out of an incident in which defendant and three others punched a man in the face (PSR ¶ 164); battery in November 1991 arising out of an incident in which defendant punched a man in the head (PSR ¶ 165); aggravated discharge of a firearm in February 1994 arising out of an incident in which he discharged a firearm in the direction of another man (PSR ¶ 166); aggravated battery in March 1996 arising out of an incident in which defendant and three others struck a police officer in the head and body (PSR ¶ 167); mob action in June 1998 arising out of an incident in which defendant stepped toward a police officer in a threatening manner (PSR ¶ 168); and battery in 1999 arising out of an incident in which defendant punched a detective in the body (PSR ¶ 169). These convictions are now remote, but defendant's willingness to use violence, including against law enforcement officers, remains a concern.

(R. 1058 at 15.) I did not place undue weight on these older convictions, and it is appropriate for a court to weigh a prisoner's "criminal past against his recent good conduct" in deciding a

compassionate release motion. United States v. Jones, 838 Fed. Appx. 199, 200 (7th Cir. 2021).

Finally, defendant contends that he is ready to return home and be a positive and productive member of society, getting his trucking company back on track and assisting his son, who has struggled since his incarceration. (R. 1067 at 7.) While I do not doubt that defendant's absence has impacted his business and his family, he fails to demonstrate that his situation is extraordinary as compared to other inmates. Defendant contends that granting release would not create unwarranted disparity because it accounts for his unique medical circumstances and unsafe living environment. (R. 1067 at 5.) For the reasons stated above and in my original order, defendant's situation is not extraordinary, and he fails to establish a compelling need for immediate release. Defendant asks the court to hold a hearing to fully develop the record regarding his claims (R. 1067 at 8), but he cites no authority in support of his request nor does he explain what sort of evidence he would present at a hearing. See United States v. Hamilton, 790 Fed. Appx. 824, 826 (7th Cir. 2020) ("[N]othing in the First Step Act requires a district court to hold any sort of hearing."); see also United States v. Smith, 982 F.3d 106, 111-12 (6th Cir. 2020) (noting that the courts of appeals have rejected the argument that a hearing is required on a First Step Act motion).

**THEREFORE, IT IS ORDERED** that defendant's motion for reconsideration (R. 1067) is denied.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge